UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------X
CARL GORE and PHILLIP BROOMES,

             Plaintiffs,

   -against-

CITY OF NEW YORK and
WALIUR RAHMAN,

             Defendants.
------------------------------X

CV13 1613
KORMAN, J.
POLLAK, M.J

COMPLAINT

**PLAINTIFFS DEMAND A TRIAL BY JURY**

NO SUMMONS ISSUED

Plaintiffs Carl Gore and Phillip Broomes, by their attorneys, Reibman & Weiner, as for their complaint against the defendants, allege, upon information and belief, as follows:

### PARTIES, JURISDICTION and VENUE

1. At all relevant times herein, plaintiff Carl Gore was a male resident of Kings County, within the City and State of New York.

2. At all relevant times herein, plaintiff Phillip Broomes was a male resident of Kings County, within the City and State of New York.

3. At all relevant times herein, defendant City of New York was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York and acts by and through its agencies, employees and agents, including, but not limited to, the New York City Police Department ("NYPD") and its employees.

4. At all relevant times hereinafter mentioned, defendant Waliur Rahman, whose tax registry number is believed to be 907113, was employed by the City of New York

as a member of the NYPD and assigned to Narcotics Bureau Brooklyn North ("NBBN"). Rahman is sued herein in both his official and individual capacities.

5. Upon information and belief, at all relevant times herein Rahman was acting in the course of his employment with the NYPD under color of law.

6. Original jurisdiction of this Court is founded upon 28 U.S.C. §§ 1331, *et seq.*, and 42 U.S.C. §§ 1981 and 1983.

7. Venue is properly laid in this district pursuant to 28 U.S.C. §1391, *et seq.*, because many of the events complained of herein occurred within the Eastern District of New York, and because it is the district of residence for the plaintiffs and the municipality.

## FACTUAL ALLEGATIONS

8. On October 13, 2011, at or about 12:20 a.m., plaintiff Gore was lawfully present outside of 72 Rogers Avenue ("the Premises"). He was suddenly seized by a plainclothes police officer, handcuffed, and brought inside the Premises, where members of the NYPD were executing a search warrant.

9. At or about the same time, plaintiff Broomes was inside the Premises as an invited guest.

10. The Premises is understood to be a privately owned building that consists, in relevant part, of a bar or social club.

2

11. On October 13, 2011, at or around midnight, various members of law enforcement, including defendant Rahman and other members of the NBBN, physically forced their way into the Premises.

12. At no time did the defendants have adequate legal cause to detain, seize or arrest plaintiffs, nor could defendants have reasonably believed that such cause existed.

13. The plaintiffs were detained at the Premises for a period of time and then transported to a local NYPD Precinct station house for processing. While at the station house, the plaintiffs was fingerprinted, photographed, and searched.

14. Plaintiffs were eventually transported to Central Booking in Kings County, where they were imprisoned for a period of many hours.

15. While plaintiffs were imprisoned by the defendants, Rahman completed arrest paperwork in which he claimed to have personally observed (i) plaintiff Gore in possession of crack cocaine, and (ii) plaintiff Broome in possession of both marijuana and cocaine residue.

16. These factual allegations by Rahman were materially false, and Rahman knew them to be false at the time he first made them, and at every time thereafter when he repeated them.

17. Rahman forwarded these false allegations to the Kings County District Attorney ("KCDA") in order to justify the arrests and to persuade the KCDA to commence the plaintiffs' criminal prosecutions.

18. As a direct result of these allegations by Rahman, the plaintiffs were criminally charged by the Kings County District Attorney. Gore was charged under docket number 2011KN081653 and Broomes under docket number 2011KN081651.

19. The plaintiffs were required to return to Court on pain of arrest on at least one more occasion.

20. All criminal charges against both plaintiffs were subsequently dismissed and the actions terminated in their favor.

21. Neither of the plaintiffs were in possession of narcotics, or any other contraband, nor had any of the plaintiffs been observed engaging in any illegal activity or any other conduct that would reasonably support a belief that the plaintiffs constructively possessed narcotics or weapons.

22. At no time did the defendants have adequate legal cause to detain, seize or arrest plaintiffs, nor could defendants have reasonably believed that such cause existed.

23. At all times relevant herein, each of the defendants, including all of the John Doe defendants, were acting within the scope of their employment with the NYPD and the City of New York, and their acts were done in furtherance of the City of New York's interests and without legal justification or excuse.

### FIRST CAUSE OF ACTION

24. Plaintiffs repeat and reallege each and every allegation of paragraphs "1" through "23" of the complaint as if incorporated and reiterated herein.

25. Defendant Rahman willfully and intentionally seized, searched and arrested plaintiffs, or otherwise caused their seizure, search and arrest, without cause, and without a reasonable basis to believe such cause existed.

26. Defendant Rahman further fabricated evidence and denied plaintiffs their right to a fair trial and caused them to be maliciously prosecuted.

27. In so doing, defendant Rahman violated plaintiffs' rights under the Fourth, Sixth and Fourteenth Amendments of the United States Constitution.

28. By reason thereof, defendant has violated 42 U.S.C. § 1983 and caused the plaintiffs to be deprived of their federal constitutional rights, and to suffer loss of liberty, humiliation and embarrassment, emotional and physical suffering, and mental anguish.

## SECOND CAUSE OF ACTION

29. Plaintiffs repeat and reallege each and every allegation of paragraphs "1" through "28" of the complaint as if incorporated and reiterated herein.

30. Defendant Rahman's actions in this matter were carried out in accordance with an existing plan or policy created or otherwise condoned by the municipal defendant designed to increase the number of arrests made without regard to probable cause generally, and within the Narcotics Bureau specifically.

31. More precisely, under this policy or plan, officers within the Narcotics Bureau generally, and in the NBBN in particular, including the individual defendant, would secure warrants to search social clubs, apartments, and other locations, and, if any

contraband was found, routinely arrest all persons found therein, regardless of whether there was any factual basis for the charges. The arresting officer(s) would then make false statements of fact as to seeing narcotics in plain view or otherwise in the possession of each of the persons arrested.

32. The purpose of this policy or plan was to generate large numbers of arrests to help the NYPD create a false impression of positive activity by their officers.

33. In addition, members of the Narcotics Bureau are evaluated, at least in part, on the basis of their "activity" which is measured by the number of arrests made, search warrants secured, and other, similar criteria. Thus, members of the Narcotics Bureau routinely make arrests and engage in other police activity without sufficient legal cause in order to raise their levels of "activity" and improve the perception of their job performance.

34. The policy or plan was kept in effect from, at least, 2006 through, at least, the date of plaintiff's arrest, despite the municipal defendant's knowledge that the individuals arrested were not being charged or that there was insufficient evidence to justify the arrests or that the arresting officers were seeking to bolster the arrests with false allegations, and that the prosecuting offices often had found insufficient cause to justify the imposition of charges or continued prosecution if charges were filed.

35. Evidence of this plan can be found, for example, in several cases involving defendant Rahman. For instance, he was a named defendant in *Hicks v. City of New York*, 06 CV 2044 (CPS) (RML), in which ten plaintiffs alleged that the defendant and other members of the NBBN falsely arrested them inside a social club. The KCDA declined to

6

charge any of the plaintiffs. That case was settled for $225,000. In *Aviles v. City of New York*, 06 CV 6076 (CPS) (RML), Rahman was not a named defendant, but was part of the team that carried out multiple arrests in the same social club as in *Hicks*. Again the KCDA declined to press charges. That action was settled for $450,000.

36. Rahman was also a named defendant in *Johnson v. City of New York*, 09 CV 3534 (DLI) (JMA). In that action, Rahman claimed to have personally witnessed the two plaintiffs in possession of narcotics while executing a search warrant inside the exact same location as in this case. The KCDA declined to charge one plaintiff and moved to dismiss the charges against the other plaintiff. That action was settled for $82,500.

37. In October 2011, following a bench trial in New York State Supreme Court, Kings County, under indictment number 06314-2008, former NYPD narcotics officer Jason Arbeeny was convicted of planting drugs on two individuals and falsifying arrest reports. Before issuing a verdict of guilty, the trial judge scolded the NYPD for what he described as a "widespread culture of corruption endemic in its drug units." The judge further stated that the testimony demonstrated that the NYPD narcotics divisions maintain a "cowboy culture" and that he was "shocked, not only by the seeming pervasive scope of misconduct but even more distressingly by the seeming casualness by which such conduct is employed."

38. In sum, there is in place at the NBBN a policy by which NBBN officers routinely arrest people without regard for probable cause and then fabricate evidence

to justify these arrests when probable cause does not exist. This practice is tolerated by the municipal defendant because it helps create artificially high arrest numbers.

39. Defendant City of New York created, approved or condoned the practice and policy, as carried out by the Narcotics Bureau generally and the NBBN in particular, of making wholesale arrests without probable cause in order to create false or misleading arrest numbers.

40. By reason thereof, the municipal defendant has violated 42 U.S.C. § 1983 and caused each the plaintiffs to be deprived of their federal constitutional rights, and to suffer loss of liberty, humiliation and embarrassment, emotional and physical suffering, and mental anguish.

### THIRD CAUSE OF ACTION

41. Pursuant to Rule 10(c), plaintiffs repeat and reallege each and every allegation of paragraphs "1" through "40" of the complaint as if incorporated and reiterated herein.

42. The municipal defendant was on notice that members of the Narcotics Bureau, and the NBBN in particular, were engaged in the practice of making wholesale arrests of individuals found in residences or businesses regardless of the existence of probable cause as set out in the preceding paragraphs.

43. More precisely, the municipal defendant was on notice that Rahman was making arrests without probable cause, that the KCDA was declining to prosecute or to continue the prosecutions of people arrested by Rahman, and that the municipal defendant

had expended at hundreds of thousands of dollars to compensate individuals who had been wrongly arrested.

44. Notwithstanding this notice, the municipal defendant was deliberately indifferent to Rahman's repeated violation of the constitutional rights of the people of the City of New York. In short, the municipal defendant was put on notice that Rahman was repeatedly engaging in the deliberate violation of the United States Constitution and took absolutely no steps to rein in or otherwise limit or prevent this conduct.

45. The municipal defendant is therefore liable for the negligent supervision of defendant Rahman and the NBBN generally.

46. By reason thereof, defendants have caused the plaintiffs to be deprived of their federal constitutional rights, and to suffer loss of liberty, humiliation and embarrassment, emotional and physical suffering, and mental anguish.

## DEMAND FOR A JURY TRIAL

Pursuant to Fed. R. Civ. P. 38, the plaintiffs hereby demand a jury trial of all issues capable of being determined by a jury.

WHEREFORE, the plaintiffs demand judgment against the defendants jointly and severally as follows:

i. on the first cause of action, actual and punitive damages against Waliur Rahman in an amount to be determined at trial;

ii. on the second and third causes of action actual damages in an amount to be determined at trial;

iii. statutory attorney's fees pursuant to, *inter alia*, 42 U.S.C. §1988, as well as disbursements, and costs of this action; and

iv. such other relief as the Court deems just and proper.

Dated: Brooklyn, New York
March 25, 2013

REIBMAN & WEINER

By: _____
Michael Lumer, Esq. (ML-1947)
Attorneys for Plaintiffs
26 Court Street, Suite 1808
Brooklyn, New York 11242
(718) 522-1743